Nos. 2--05--0575 & 2--05--0589 cons.          filed: 5/24/06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | |
|---|---|
| In re GAIL F., Alleged to be a Person Subject) to Involuntary Admission | Appeal from the Circuit Court of Kane County. |
| | ) |
| | ) No. 05--MH--72 |
| | ) |
| (The People of the State of Illinois, | ) Honorable |
| Petitioner-Appellee, v. Gail F., | ) James C. Hallock, |
| Respondent-Appellant). | ) Judge, Presiding. |

| | |
|---|---|
| In re GAIL F., Alleged to be a Person) Subject to Involuntary Administration of Psychotropic Medication | Appeal from the Circuit Court ) of Kane County. |
| | ) |
| | ) No. 05--MH--73 |
| | ) |
| (The People of the State of Illinois, | ) Honorable |
| Petitioner-Appellee, v. Gail F., | ) James C. Hallock, |
| Respondent-Appellant). | ) Judge, Presiding. |

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

This is the consolidated appeal of the judgment in an involuntary admission proceeding and a proceeding for involuntary treatment. The respondent in both is Gail F. In her first appeal, the respondent asserts that her involuntary admission was improper because the State failed to show that she, as a voluntary admittee, had filed a written request for a discharge. We agree. We further hold that the respondent did not waive the requirement that the State present proper evidence on this point by failing to raise the issue in the trial court. We therefore reverse the order approving her involuntary admission. In her second appeal, the respondent asserts that the trial court erred in

approving her involuntary treatment because the State failed to present any evidence about some of the medications for which it sought approval, thus making it impossible for the court to properly evaluate whether the benefits of treatment outweighed the risks. We again agree, and thus reverse the order approving involuntary treatment.

The respondent was admitted voluntarily to Elgin Mental Health Center on some date not given. On May 18, 2005, the State petitioned for her involuntary admission. Simultaneously, it filed a petition for involuntary medication.

At the hearing on involuntary admission, Dr. Arturo Fogata, the respondent's treating psychiatrist, testified that he had diagnosed her as suffering from bipolar disorder, manic-psychotic. He stated that she had persecutory and grandiose delusions, describing herself as a whistleblower who had been involved in operation Greylord and operation Silver Shovel and who had helped expose corrupt doctors and police officials. She was not aware that she had an illness. Moreover, he said she claimed that all of her hospital records were actually her twin sister's. (Other evidence suggested that the respondent did in fact have a twin.) In his evaluation, Fogata also considered that the respondent had faxed a document to the Skokie police listing people she wanted beaten or killed. He believed that her record showed that her symptoms went back at least to 1998, but there was no indication that she had ever taken medication for them. Fogata opined that the respondent's delusions interfered with her basic functioning and created a risk of violence. Further, she was dependent on her guardian to buy food and shelter. However, the chance that medication would control or stabilize her symptoms was high.

The respondent's son and a social worker for her guardian also testified. The social worker described incidents in which she considered the respondent's behavior threatening.

The respondent testified on her own behalf. Her answers were mostly rambling and nonresponsive. However, she was clear in saying that she knew that she should not have sent the fax about people she wanted beaten or killed to the Skokie police. She had acted out of frustration because people were threatening her for her work, which had resulted in blacks coming to the North Shore. She told the court that she did not have time for a paying job because it would not leave her time for her work as an advocate--she worked with "victims" for the NAACP, the Jewish Federation, and the Archdiocese. She helped about a million victims a year. Further, she did not believe she was mentally ill and never had been depressed or suicidal.

None of the evidence at this hearing touched on whether the respondent had made a written request for a discharge. The only evidence on this point came in at the hearing on the petition for involuntary medication, which immediately followed the hearing on involuntary admission: when the State asked Fogata whether the respondent was a voluntary or involuntary admittee, he said that she had signed in voluntarily, but "she requested for [sic] a discharge." At the end of the hearing on involuntary admission, the court found the respondent to be a person subject to involuntary admission.

In its petition for involuntary treatment, the State sought permission to administer 12 medications[1] in specified dosage ranges. At the hearing, Fogata testified about 10 medications[2] that

---

[1]The medications were risperidone (0.5 to 6 mg per day); olanzapine (5 to 20 mg per day); quetiapine (25 to 800 mg per day); haloperidol (2 to 20 mg per day); Risperdal IM Consta (written as "Risperidone IM Consta") (25 to 50 mg every two weeks); haloperidol D. IM (100 to 200 mg every two weeks); ziprasidone (20 to 160 mg per day); aripiprazole (10 to 30 mg per day); divalproex/Depakote (250 to 2,000 mg per day); lithium (300 to 1,200 mg per day);

he sought to administer. He gave evidence of what he deemed to be the appropriate maximum and minimum doses of eight medications. He did not testify at all about two drugs on the petition form,

carbamazepine/Tegretol (100 to 600 mg per day); and lamotrigine (25 to 200 mg per day). Of the medications on this list, Risperdal IM Consta, haloperidol D. IM, carbamazepine, and lamotrigine were listed as alternative choices if the first choices were ineffective or could not be effectively administered.

[2]Risperidone, olanzapine, quetiapine, haloperidol, Risperdal IM Consta, haloperidol D. IM, divalproex/Depakote, lithium, carbamazepine, and lamotrigine.

ziprasidone and aripiprazole, and did not testify about the dosages of Risperdal IM Consta, haloperidol D. IM (long-acting forms of risperidone and haloperidol), carbamazepime/Tegretol, or lamotrigine. The order approving involuntary medication allowed all 12 medications on the petition form at the dosages given there. When Fogata did testify about dosages, he restated the ranges he had specified in the petition. When, on cross-examination, the respondent's attorney asked him whether certain of the doses were unusually high, he said that the high end of the range on the petition was the maximum approved amount.

The respondent's attorney stipulated to her diagnosis. Based on that stipulation, the court found that the respondent suffered from a serious mental illness. Fogata testified that he had given her written materials on the risks and benefits of the medications he intended to prescribe and that she refused to take the medications. Her behavior, in his opinion, had deteriorated, as exemplified by her sending of the fax to the Skokie police. He believed her delusions had become more elaborate, further reducing her ability to function. He noted that bipolar patients often become functional when taking medications. Fogata therefore opined that the benefit of medications outweighed the harm.

The medications Fogata was proposing were of three classes: antipsychotics, mood stabilizers, and antidepressants. He expected the antipsychotics to control her delusions and help her "develop a more organized thinking." Side effects could include nausea and movement-related symptoms, such as tremors or stiffness of the arms. He expected the mood stabilizers to control her mania, but could have side effects of lowering blood count or causing hypothyroidism. He sought permission for ancillary blood testing to monitor her condition and reduce or control side effects. Fogata opined that the respondent probably could not recover without the medications, nor could she benefit from other therapy and community resources.

Fogata further opined that the respondent did not understand that she had a choice whether to take the medications because she did not understand that she had an illness. Her illness prevented her from understanding the risks and benefits because it prevented her from seeing any benefit. However, the reason she gave for not wanting to take the medications was the documented risk of side effects, which Fogata conceded was a reasonable concern. He noted that she had never taken medications for psychiatric illness.

The respondent testified that she did not want to take the medications because of the "contraindications" and because her ability to function had been fine for seven years without them. The fax to the Skokie police had been an isolated mistake. She was concerned that the medications would make her act "drugged": "I see people drugged. These people are acting up--they can't even walk down--not the aisle, the highway. Some of them are so overdrugged they're in bed all day." However, she was not opposed to medications in general: she took Synthyroid for her underactive thyroid and Claritin for her allergies. These medications worked for her, and she could feel the difference. Regarding her thyroid disease, she explained: "Thyroid controls pretty much everything. And because being a twin, my sister has overactive and I'm underactive. Things aren't always equal in the womb. Twins are multiples." The court granted the petition for involuntary treatment.

We first consider the respondent's claim that the court erred in approving her admission when the State did not present evidence that the respondent, a voluntary admittee, had made a written request for a discharge. We note that, although the order under review is expired, review of an involuntary admission order is nevertheless appropriate because "the collateral consequences related to the stigma of an involuntary admission may confront respondent in the future." In re Splett, 143 Ill. 2d 225, 228 (1991). The State has the burden of showing the need for involuntary admission by clear and convincing evidence. In re Schumaker, 260 Ill. App. 3d 723, 727 (1994). We will not

reverse a circuit court's finding that a person is subject to involuntary admission unless it is against the manifest weight of the evidence. In re Tyrone S., 339 Ill. App. 3d 495, 502 (2003).

The precedent under section 3--403 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3--403 (West 2004)) is clear that, when a respondent is a voluntary admittee, the State must present evidence that the respondent has requested a discharge in writing before a court can properly grant a petition for involuntary admission. In re Splett, 143 Ill. 2d at 234; In re Lawrence, 239 Ill. App. 3d 424, 427 (1993). Even if we consider Fogata's second-hearing testimony that the respondent requested a discharge as evidence relevant to the earlier hearing, the State presented no evidence that she made a written request. The only suggestion in the record that the respondent made a written request appears on the first page of the petition, where the preparer checked a box, "voluntary admittee submitted a written notice of desire to be discharged." However, material in the petition is not evidence. In re Lawrence, 239 Ill. App. 3d at 427. Therefore, we conclude that the State did not satisfy the requirement that it show that the respondent requested a discharge in writing.

The State argues that the respondent has forfeited consideration of the issue by failing to raise it below. We disagree. Initially, we are not fully convinced that forfeiture of an issue of this kind is even possible in a nonjury proceeding. Procedurally, Supreme Court Rule 366(b)(3)(ii) (155 Ill. 2d R. 366(b)(3)(ii)) governs the preservation of issues for review in a nonjury involuntary admission proceeding. In re Steve E., 363 Ill. App. 3d 712, 717 (2006). Rule 366(b)(3)(ii) provides that "[n]either the filing of nor the failure to file a post-judgment motion limits the scope of review." 155 Ill. 2d R. 366(b)(3)(ii). It is true that, as the State's failure to present evidence on this point meant that it failed to make a prima facie case, the respondent presumably would have been successful in a judgment in her favor at the close of the State's evidence. See 735 ILCS 5/2--1110

(West 2004).  However, we know of no authority that holds that failure to file such a motion impairs a party's ability to raise the sufficiency of the evidence as an issue on appeal.  Thus, there is no point in a nonjury proceeding in which a party must either raise or forfeit an issue of the sufficiency of the evidence.  Accordingly, we do not view the State's failure to present evidence of a written request for a discharge as an issue that a respondent can forfeit in a nonjury proceeding.

Beyond that, appellate court precedent uniformly rejects the position that a respondent can forfeit the issue of the State's failure to show a written request for a discharge, and the supreme court has not held otherwise.  In In re Weimer, 219 Ill. App. 3d 1005, 1009 (1991), we held that an involuntary commitment order is void when a court enters it against a voluntary patient and the State has not shown that he or she made a written request for a discharge.  In this holding, we followed In re Hays, 115 Ill. App. 3d 686, 689 (1983).  The supreme court affirmed the holding of In re Hays without specifically considering whether the order was void or whether the issue could be forfeited.  In re Hays, 102 Ill. 2d 314, 317 (1984).  In In re Splett, it explicitly stated that it had not decided and was not deciding the voidness/forfeiture issue.  In re Splett, 143 Ill. 2d at 235.  Most recently, in In re N.S., 359 Ill. App. 3d 1125, 1129 (2005), a Fourth District panel recognized the use of the voidness rationale for reviewing this issue despite the respondent's failure to raise it in the trial court, but also suggested that it could consider the matter on a basis akin to plain error.  Given that we find no support in our law for deeming the issue forfeited, we will not do so.

We now turn to the respondent's second appeal, that of the order for involuntary treatment. Initially, we note that this case is moot.  Section 2--107.1(a--5)(5) of the Code (405 ILCS 5/2--107.1(a--5)(5) (West 2004)) provides that an order authorizing the administration of involuntary treatment may not be effective for more than 90 days, and 90 days have long since passed. However, as both parties note, we routinely review orders for the involuntary administration of

psychotropic drugs either under the public interest exception to the mootness doctrine (e.g., In re Robert S., 213 Ill. 2d 30, 45 (2004)) or on the basis that they are capable of repetition, yet would otherwise evade review (e.g., In re John R., 339 Ill. App. 3d 778, 781 (2003)).

Before the court can order involuntary treatment, the State must show the existence of all of the factors listed in section 2--107.1(a--5)(4) of the Code (405 ILCS 5/2--107.1(a--5)(4) (West 2004)). In pertinent part, section 2--107.1(a--5)(4) provides:

"(4) Authorized involuntary treatment shall not be administered to the recipient unless it has been determined by clear and convincing evidence that all of the following factors are present:

(A) That the recipient has a serious mental illness or developmental disability.

(B) That because of said mental illness or developmental disability, the recipient currently exhibits any one of the following: (i) deterioration of his or her ability to function, as compared to the recipient's ability to function prior to the current onset of symptoms of the mental illness or disability for which treatment is presently sought, (ii) suffering, or (iii) threatening behavior.

(C) That the illness or disability has existed for a period marked by the continuing presence of the symptoms set forth in item (B) of this subdivision (4) or the repeated episodic occurrence of these symptoms.

(D) That the benefits of the treatment outweigh the harm.

(E) That the recipient lacks the capacity to make a reasoned decision about the treatment.

(F) That other less restrictive services have been explored and found inappropriate.

(G) If the petition seeks authorization for testing and other procedures, that

such testing and procedures are essential for the safe and effective administration of

the treatment."

In reviewing the sufficiency of the evidence supporting an order for involuntary treatment, we will not reverse unless the finding was against the manifest weight of the evidence. In re Cathy M., 326 Ill. App. 3d 335, 341 (2001).

Here, the respondent asserts that the State's evidence was insufficient both on the question of whether (1) the benefits of the treatment outweigh the harm and the question of whether (2) she lacked the capacity to make a reasoned decision about the treatment. We consider only the first issue, as we find it to be decisive.

The State presented no evidence at all regarding two of the medications listed on the petition and order, ziprasidone and aripiprazole. The parties agree that the court could not properly weigh the harm of those medications. See In re Louis S., 361 Ill. App. 3d 774, 781 (2005); In re Len P., 302 Ill. App. 3d 281, 286 (1999). The respondent, citing In re Mary Ann P., 202 Ill. 2d 393, 405 (2002) (which held that a trial court must decide whether the benefits outweigh the harm for all of the medications on a petition, and that it cannot selectively approve some medications while rejecting others), argues that the failure was fatal to the entire petition. The State asserts that the lack of evidence affects only the approval of ziprasidone and aripiprazole and that we can simply modify the order to exclude those two medications from the list of drugs that may be administered. It suggests that the effect of its failure to present evidence on the 2 was to amend the petition to include only the 10 on which it presented evidence. In sum, the respondent asserts that the trial court's error was in approving the petition at all, whereas the State asserts that it erred only in approving the use of ziprasidone and aripiprazole. We conclude that under In re Mary Ann P., the

˘10˘

court cannot approve fewer than all the medications listed on the petition unless the treating physician is seeking authorization for fewer than all.

In In re Mary Ann P., the supreme court made it clear that modification of the treatment plan embodied in the petition must be a matter of medical judgment, not legal:

"As this court has recognized, *** the diagnosis and treatment of mental health disorders is a ' "highly specialized area of medicine which is better left to the experts." ' [Citation.] Indeed, section 2-107.1 vests the physician authorized to administer the involuntary treatment 'complete discretion' not to administer the treatment. [Citation.] It is thus not for the trial court or the jury to 'develop a course of treatment and then dictate that course to the treating physician. That would constitute role reversal.' [Citation.] In the words of amici curiae, allowing the layperson jury to determine which of the various medications should be involuntarily administered 'dangerously approaches the practice of medicine.' " (Emphasis in original.) In re Mary Ann P., 202 Ill. 2d at 406.

While we do not understand the rule in In re Mary Ann P. to create an absolute bar on a court's approval of fewer than all of the medications listed in the written petition, we read it to require that any variance from the petition be made at the behest of the treating physician. We do not deem a simple failure to testify about a medication to suggest the treating physician's judgment, as failure to present evidence may reflect legal error rather than medical judgment. Because the record in this case shows nothing but an omission of evidence, selective authorization by the court would be improper. Therefore, the court's error was in approving the petition at all, and we must reverse its judgment.

For the reasons given, we reverse the orders of the circuit court of Kane County approving the respondent's involuntary admission and authorizing her treatment with psychotropic medication.

No. 2--05--0575, Reversed.

No. 2--05--0589, Reversed.

BOWMAN and O'MALLEY, JJ., concur.