2022 IL App (1st) 211541-U

No. 1-21-1541

Order filed May 11, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| In the Interest of M.R., a minor, | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Cook County. |
| Petitioner-Appellee, | ) | |
| | ) | No. 20 JA 1602 |
| v. | ) | |
| | ) | Honorable |
| Y.R.-C., | ) | Andrea Buford, |
| | ) | Judge, presiding. |
| Respondent-Appellant.) | ) | |

JUSTICE BURKE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the trial court's finding following an adjudicatory hearing that the minor
           was abused and neglected over respondent's challenges to the sufficiency of the
           evidence and counsel's effectiveness.

¶ 2    Following an adjudicatory hearing, the trial court found that the minor, M.R., was

neglected due an injurious environment and abused due to a substantial risk of physical harm

created by respondent, Y.R.-C., his mother. Immediately thereafter, following a dispositional

hearing, the court made M.R. a ward of the court with a permanency goal of returning to respondent's custody within five months. On appeal, respondent challenges the sufficiency of the evidence and the effectiveness of counsel at the adjudicatory hearing. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Respondent gave birth to M.R. on November 21, 2020. L.C.'s paternity was established by DNA testing on May 27, 2021. On November 30, 2020, the State filed a petition for adjudication of wardship for M.R., alleging that he was neglected due to an injurious environment and abused due to a substantial risk of physical harm created by respondent.[1] The petition alleged that when M.R. was born, respondent and L.C. had another child already in Department of Children and Family Services (DCFS) custody, as well as two prior indicated reports for substantial risk of physical injury and an environment injurious to that child's health and welfare.[2] Respondent and L.C. were married but did not live together. The State also alleged that respondent and L.C. had "an ongoing issue of domestic violence" and had not completed reunification services with respect to their older child. On November 30, 2020, following a hearing, the trial court granted temporary custody of M.R. to the DCFS guardianship administrator.

¶ 5      The trial court held an adjudicatory hearing on November 8, 2021. The State introduced the testimony of DCFS child protection investigator Yvette Kyriak-Lopez through a combination of in-person and stipulated testimony. Kyriak-Lopez was assigned to M.R.'s case on November

---

[1] The filing stamp on the State's petition is dated November 20, 2020. This appears to be an error, as M.R was born on November 21, 2020. The trial court's docket report, which is included in the record on appeal, indicates that the State filed its petition on November 30, 2020.

[2] An indicated report is a report of abuse or neglect supported by credible evidence following a DCFS investigation. *In re J.S.*, 2020 IL App (1st) 191119, ¶ 20 n. 2.

24, 2020, because his older sibling, E.C., had been taken into DCFS custody in 2019 due to an indicated report of domestic violence between respondent and L.C. Respondent and L.C. had a second indicated report of domestic violence in April 2020. During an in-person meeting on November 25, 2020, respondent told Kyriak-Lopez that she and L.C. separated early in January 2020, that she had an order of protection against him, and that she had had no contact with him since July 2020. Respondent also stated that she completed parenting classes for E.C. and domestic violence services for a perpetrator. Respondent stated that she had begun domestic violence victim services, had a parent coach, and planned to begin individual therapy.

¶ 6 The State also introduced in-person and stipulated testimony of Karla Perez, a case worker at Children's Home & Aid of Illinois. Perez was assigned to E.C.'s case in August 2019. At that time, respondent was "recommended for reunification services including individual therapy, domestic violence, Nurturing Parenting Program, child-parent psychotherapy and a psychological evaluation." Respondent completed the Nurturing Parent Program in August 2019. She was engaged in individual therapy in August 2019, but was unsuccessfully discharged in March 2020, and restarted individual therapy in August 2020. Respondent and L.C. both completed domestic violence services for a perpetrator by April 1, 2020.

¶ 7 In July 2020, while respondent was pregnant with M.R., she and L.C. had a physical altercation that resulted in respondent obtaining an order of protection against L.C. Also in July 2020, L.C. told Perez that he was no longer in a relationship with respondent, but that she still contacted him. Perez staffed the case with a DCFS domestic violence liaison and recommended domestic violence services for respondent as a victim and for L.C. as a perpetrator. When M.R. was born on November 21, 2020, respondent had completed two domestic violence services

sessions, but still required a psychological evaluation and child-parent psychotherapy with E.C. Respondent had not been allowed unsupervised visits with E.C. and Perez had not recommended unsupervised visits.

¶ 8    Respondent did not present any evidence. Counsel for L.C. requested that the court take judicial notice of its "prior orders and findings," but the court did not address this request. Following argument, the trial court found that M.R. was neglected due to an injurious environment and abused due to a substantial risk of physical injury. The court based its findings on M.R.'s older sibling, E.C., being in DCFS custody, the reunification services with respect to E.C. that were still outstanding when M.R. was born, the fact that that respondent "never progressed to unsupervised visits" with E.C., and the history of domestic violence between respondent and L.C.

¶ 9    The court held a dispositional hearing immediately thereafter, at which the State presented the testimony of Children's Home & Aid caseworker Elizabeth Cochran. The State also moved into evidence a DCFS service plan and Cochran's permanency planning hearing report. The court made M.R. a ward of the court, finding that respondent was making reasonable efforts but could not eliminate the need for M.R.'s removal from her home. The court also granted respondent unsupervised visits with both of her children and set a permanency goal for M.R. to return to her custody within five months. Respondent did not file any posttrial motions.

¶ 10    Respondent timely appealed.

¶ 11                                II. ANALYSIS

¶ 12    On appeal, respondent contends that the evidence at the adjudicatory hearing was insufficient to establish that she abused or neglected M.R., and that counsel rendered ineffective

assistance by failing to object to the State's witnesses' testimony about her and L.C.'s history of domestic violence.

¶ 13    The Juvenile Court Act of 1987 (the Act) (705 ILCS 405/1-1 *et seq.* (West 2020)) establishes the procedures and criteria for determining whether to remove a minor from his parent's custody and whether to make that minor a ward of the court. *In re Arthur H.*, 212 Ill. 2d 441, 462 (2004). In making this determination, the trial court uses a two-step process. *In re A.P.*, 2012 IL 113875, ¶ 18. First, the court holds an adjudicatory hearing to determine whether the minor is abused, neglected, or dependent. *Id.* ¶ 19; 705 ILCS 405/2-21(1) (West 2020). If the court determines that the minor is abused, neglected, or dependent, it holds a dispositional hearing to determine whether it is in the best interest of the minor and the public for the minor to become a ward of the court. *In re A.P.*, 2012 IL 113875, ¶ 21; 705 ILCS 405/2-21(2) (West 2020).

¶ 14    We first consider whether respondent has preserved the issues she raises on appeal. Sufficiency of the evidence is not an issue that can be forfeited on appeal from a judgment entered following a bench trial. *In re Gail F.*, 365 Ill. App. 3d 439, 445 (2006) ("there is no point in a nonjury proceeding in which a party must either raise or forfeit the issue of the sufficiency of the evidence."). So, respondent did not forfeit her challenge to the sufficiency of the evidence at the adjudicatory hearing. With respect to respondent's claim of ineffective assistance, to preserve an issue for appellate review, a party must make an objection during trial and raise the issue in a posttrial motion. See *In re Madison H.*, 215 Ill. 2d 364, 379 (2005). Respondent did not file a posttrial motion, so she has forfeited her claim of ineffective assistance. See *id.* However, forfeiture is a limitation on the parties, not on the reviewing court. *In re D.F.*, 208 Ill. 2d 223, 238 (2003). A parent's right to raise her biological child is a fundamental liberty interest, and we can review

rulings affecting that right for plain error. *Matter of Chance H.*, 2019 IL App (1st) 180053, ¶ 47. We relax the forfeiture rule in this case to address the possibility of plain error affecting the fundamental fairness of a proceeding. See *In re Jay H.*, 395 Ill. App. 3d 1063, 1067 (2009). The first step in plain error review is to determine whether error occurred at all. *Matter of Chance H.*, 2019 IL App (1st) 180053, ¶ 48.

¶ 15    The Public Guardian contends that respondent's brief violates Illinois Supreme Court Rule 341(h)(6), which requires that an appellant's brief provide us with all the facts necessary to understand the case. Ill S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Specifically, the Public Guardian complains that respondent does not address evidence presented at a February 2, 2021, adjudicatory hearing pertaining to E.C., the transcript of which is included in the record on appeal. The Public Guardian argues that "all of the evidence of the abuse or neglect of E.C. is admissible on the question whether M.R. was abused, neglected, or both" pursuant to section 2-18(3) of the Act, and is essential to our resolution of this appeal. Section 2-18(3) provides that "[i]n any hearing under this Act, proof of the abuse, neglect or dependency of one minor shall be admissible evidence on the issue of the abuse, neglect or dependency of any other minor for whom the respondent is responsible." 705 ILCS 405/2-18(3) (West 2020).

¶ 16    The transcript of E.C.'s February 2, 2021, adjudicatory hearing has the caption of M.R.'s case, and the State indicated that it was calling both M.R.'s case and E.C.'s case on that date. However, the evidence introduced at the February 2, 2021, hearing concerned only E.C., not M.R. Just because the evidence at E.C.'s adjudicatory hearing was admissi*ble* at M.R.'s adjudicatory hearing (see 705 ILCS 405/2-18(3) (West 2020)) does not mean that evidence was admitt*ed* at M.R.'s hearing (see *People v. Dabbs*, 239 Ill. 2d 277, 287-88 (2010)). No party moved to admit

the evidence from E.C.'s February 2, 2021, adjudicatory hearing during M.R.'s November 8, 2021, adjudicatory hearing, and the trial court made no rulings on whether it was admitting that evidence. We do not consider evidence that was not admitted. See *In re C.D.*, 2020 IL App (3d) 190176, ¶¶ 30, 36 (a trial court commits error when it "notices" matters not introduced at a hearing, even though they are within the court's personal knowledge of a case, and we compound that error by affirming based on the unsubmitted evidence). And, although "the court may take judicial notice of prior sworn testimony or evidence admitted in prior proceedings involving the same minor," (705 ILCS 405/2-18(6) (West 2020)), the two adjudicatory hearings at issue involved different minors. As noted above, the trial court did not rule on L.C.'s request that it take judicial notice of its "prior orders and findings." We will only consider the evidence that the trial court heard at M.R.'s November 8, 2021, hearing.

¶ 17 Moreover, there is no indication in the record that the court intended to consolidate the adjudicatory hearings for both minors. See *In re C.C.*, 224 Ill. App. 3d 207, 216 (1991) (decision to consolidate parental rights proceedings is within the sound discretion of the trial court). On the contrary, the court held two separate adjudicatory hearings nine months apart and heard different witnesses and different evidence at those hearings. At the February 2, 2021, hearing, the court only made an adjudicatory ruling with respect to E.C., and it continued M.R.'s case for DNA testing to establish paternity. We reject the Public Guardian's suggestion that E.C.'s adjudicatory hearing was incorporated into M.R.'s adjudicatory hearing. Respondent's brief does not violate Rule 341(h)(6), so we will address her claim regarding the sufficiency of the evidence on the merits, and her claim of ineffective assistance under plain error review.

¶ 18    Respondent first contends that the evidence at the adjudicatory hearing was insufficient to establish that she subjected M.R. to an injurious environment or a substantial risk of harm. As explained above, at the adjudicatory hearing, the trial court must determine whether the minor is abused, neglected, or dependent. 705 ILCS 405/2-18(1) (West 2020). The State must prove abuse and neglect by a preponderance of the evidence, meaning that the allegations of abuse and neglect are more probably true than not true. *In re Arthur H.*, 212 Ill. 2d at 463. The court considers the minor's status at the time the State filed its petition. *In re Kenneth D.*, 364 Ill. App. 3d 797, 804 (2006). A neglected minor is any minor under 18 years of age whose environment is injurious to his or her welfare. 705 ILCS 405/2-3(1)(b) (West 2020). Neglect means "the failure to exercise the care that circumstances justly demand, and encompasses both willful and unintentional disregard of parental duty." *In re Jordyn L.*, 2016 IL App (1st) 150956, ¶ 28. The term "injurious environment" is "an amorphous concept that cannot be defined with particularity, but has been interpreted to include the breach of a parent's duty to ensure a safe and nurturing shelter for h[er] children." *In re Kamisha J.*, 364 Ill. App. 3d 785, 793 (2006). An "abused child" is a child whose parent "creates a substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement, impairment of emotional health, or loss or impairment of any bodily function." 705 ILCS 405/2-3(2)(ii) (West 2020).

¶ 19    As it did in this case, the State may present a theory of anticipatory neglect, in which it seeks to protect not only children who are the direct victims of neglect or abuse, but also children who have a probability to be subjected to neglect or abuse because they reside, or in the future may reside, with an individual who has neglected or abused another child. See *In re Arthur H.*, 212 Ill. 2d at 468. "Although the neglect of one child does not conclusively show the neglect of another

child, the neglect of one minor is admissible as evidence of the neglect of another minor under a respondent's care." *In re Kenneth D.*, 364 Ill. App. 3d at 801. The court should consider both the circumstances surrounding the previously neglected sibling and the care and condition of the child named in the petition. *In re Arthur H.*, 212 Ill. 2d at 468. Each case of anticipatory neglect must be reviewed based on its own facts. *In re J.S.*, 2020 IL App (1st) 191119, ¶ 73.

¶ 20    We review a trial court's findings of abuse and neglect under a manifest weight of the evidence standard. *In re Alexis H.*, 401 Ill. App. 3d 543, 551 (2010). We give the trial court's findings deference because it is in a better position to observe the witnesses and assess their credibility. *In re Zoey L.*, 2021 IL App (1st) 210063,¶ 32 (not yet released for publication and subject to revision or withdrawal) (citing *In re T.B.*, 215 Ill. App. 3d 1059, 1062 (1991)). We will not disturb the court's findings unless the record clearly demonstrates that the court should have reached the opposite result or that the court's determination is unreasonable, arbitrary, and not based on evidence. *Id.* (citing *In re D.W.*, 386 Ill. App. 3d 124, 139 (2008); *In re K.T.*, 361 Ill. App. 3d 187, 201 (2005)). We may affirm the trial court's ruling if any of its bases of abuse or neglect may be upheld. *In re Abel C.*, 2013 IL App (2d) 130263, ¶ 28 (citing *In re Faith B.*, 216 Ill. 2d 1, 14 (2005)).

¶ 21    The trial court's ruling at the adjudicatory hearing was not against the manifest weight of the evidence. The evidence established that, in 2019, the year before M.R. was born, respondent lost custody of M.R.'s sibling, E.C., due to domestic violence between respondent and L.C. Respondent had not completed reunification services with respect to E.C. when the State filed its petition pertaining to M.R. on November 30, 2020. Specifically, Yvette Kyriak-Lopez testified that respondent had not completed domestic violence victim services or individual therapy. Karla

Perez testified that respondent had not completed a psychological evaluation or child-parent psychotherapy, and had not been recommended for or allowed unsupervised visits with E.C. These facts supported the trial court's finding under a theory of anticipatory neglect. See *In re Kenneth D.*, 364 Ill. App. 3d at 802 (upholding a finding of neglect because the minor's siblings were exposed to drugs *in utero* and the mother failed to complete reunification services with respect to the other children). It was reasonable for the trial court to conclude that respondent could not provide a safe and nurturing shelter for M.R. as of November 2020 because, at that time, she had not even been allowed unsupervised visitation with M.R.'s older sibling, much less ensured a safe and nurturing shelter for him. See *In re Kamisha J.*, 364 Ill. App. 3d at 793. The trial court did not need to wait until M.R. was harmed to protect him. See *In re J.S.*, 2020 IL App (1st) 191119, ¶ 73. The evidence supported the trial court's ruling at the adjudicatory hearing.

¶ 22    Respondent argues that we cannot affirm the trial court's ruling under a theory of anticipatory neglect because the trial court did not make a finding of anticipatory neglect. We disagree. Both the State and respondent addressed anticipatory neglect in their closing arguments, and the court's ruling was based on respondent's recent neglect of E.C., which put M.R. at risk of abuse and neglect. Just because the court did not say the words "anticipatory neglect" in its ruling does not mean that it did not consider, or rule, based on that theory. We can affirm the trial court's ruling on any basis (see *In re Abel C.*, 2013 IL App (2d) 130263, ¶ 28), and the record before us supports a finding of anticipatory neglect.

¶ 23    Respondent cites *In re S.S.*, 313 Ill. App. 3d 121 (2000) as "dispositive Illinois authority requiring reversal."[3] In that case, the State sought an adjudication of neglect by the mother of S.S.,

---

[3] *In re S.S.* is a Second District case. The opinion of one district of the appellate court is not binding on another district. *O'Casek v. Children's Home and Aid Soc. of Illinois*, 229 Ill. 2d 421, 440

who was born approximately two years after his father's neglect caused the death of his older sibling. *In re S.S.*, 313 Ill. App. 3d at 124-25. The trial court found S.S. to be neglected and made him a ward of the court. *Id.* at 125-26. The Second District reversed, finding that the evidence was insufficient to establish the respondent mother's neglect of S.S. *Id.* at 132. The court explained that the mother "did not abuse S.S.'s older sibling *** nor was she present when the abuse occurred." *Id.* at 129. Moreover, "DCFS never made any efforts to remove [the older sibling] from [the mother's] care" and there was no evidence that the mother failed to complete a DCFS service plan for the older sibling. *Id.* at 129-31. The court concluded that "the evidence of past sibling abuse by [the father] was insufficient to establish a finding of neglect concerning [the mother]." *Id.* at 129.

¶ 24    *In re S.S.* is distinguishable. The key difference is that the State's theory of anticipatory neglect in *In re S.S.* was premised on the father's neglect of the older sibling, but there was no evidence that the respondent mother neglected that older sibling. By contrast, in this case, both respondent *and* L.C. lost custody of M.R.'s older sibling, E.C., because of their abuse and neglect of E.C. in the year before M.R.'s birth. Specifically, E.C. was taken into DCFS custody due to mutual domestic violence between respondent and L.C. that began in 2019 and continued into 2020. Both respondent and L.C. were recommended for domestic violence services as perpetrators. That is, respondent was a participant in the abuse and neglect that led to E.C. being taken into DCFS custody, unlike the mother in *In re S.S.* Moreover, respondent had not completed a DCFS services plan for E.C. when M.R. was born, whereas the mother in *In re S.S.* had no such plan for

---

(2008). In addition, *In re S.S.* was decided more than four years before our supreme court's decision regarding anticipatory neglect in *In re Arthur H.*

her older child. *Id.* at 129. The facts of this case are not like *In re S.S.*, so the reasoning of *In re S.S.* does not apply to this case.

¶ 25    Respondent also cites *In re Edricka C.*, 276 Ill. App. 3d 18 (1995), essentially for the proposition that a trial court cannot find anticipatory neglect if there is no evidence that the minor at issue was directly abused or neglected. Respondent's view of anticipatory neglect is too narrow. The anticipatory neglect theory exists to "protect not only children who are the direct victims of neglect or abuse, but also those who have a *probability* to be subject to neglect or abuse because they reside *** with an individual who has been found to have neglected or abused another child." (Emphasis added.) *In re Arthur H.*, 212 Ill. 2d at 468. Moreover, *In re Edricka C.* is distinguishable. In that case, the State's petition was based on the respondent's abuse and neglect of older children, which occurred three to five years before the minor at issue was born. *In re Edricka C.*, 276 Ill. App. 3d at 20. By contrast, in this case, respondent's abuse and neglect of E.C. occurred in the year before M.R.'s birth and respondent had still not completed DCFS services with respect to E.C. when M.R. was born. *In re Edricka C.* does not support reversal.

¶ 26    Respondent contends that the State's witnesses' testimony about her and L.C.'s history of domestic violence was too vague to support the trial court's ruling because neither witness described "at least one actual incident of domestic violence." We disagree. Perez testified that respondent and L.C. had a physical altercation in July 2020, when respondent was pregnant with M.R., that led to respondent obtaining an order of protection against L.C. Accordingly, we affirm the trial court's ruling at the adjudicatory hearing.

¶ 27    Finally, respondent argues that counsel rendered ineffective assistance by failing to object to Kyriak-Lopez and Perez's testimony about her and L.C.'s history of domestic violence on grounds of foundation and hearsay.

¶ 28    There is no constitutional right to counsel under the Juvenile Court Act, but the Act provides a statutory right to counsel. *In re Charles W.*, 2014 IL App (1st) 131281, ¶ 32. We apply the standard of *Strickland v. Washington*, 466 U.S. 668 (2004) to evaluate claims of ineffective assistance of counsel in juvenile proceedings. *Id.* To establish ineffective assistance of counsel, a respondent must show that counsel's performance was deficient, and that the deficient performance prejudiced the respondent. *Strickland*, 466 U.S. at 687. To establish deficient performance, a respondent must show "that counsel's performance was objectively unreasonable under prevailing professional norms." *People v. Domagala*, 2013 IL 113688, ¶ 36. Under this prong, a respondent has the burden to "overcome the strong presumption that counsel's action or inaction was the result of sound trial strategy." *People v. Anderson*, 2013 IL App (2d) 111183, ¶ 54. "To establish prejudice, a [respondent] must show that but for counsel's deficiency, 'there is a reasonable probability that the result of the proceeding would have been different.' " *People v. Brown*, 2015 IL App (1st) 122940, ¶ 47 (quoting *People v. Houston*, 229 Ill. 2d 1, 11 (2008)). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If it is easier to resolve an ineffective assistance claim based on a failure to demonstrate prejudice, a court need only address that prong. *Id.* at 697.

¶ 29    Respondent contends that counsel should have objected to Kyriak-Lopez's and Perez's testimony about her and L.C.'s prior domestic violence because neither witness laid a proper foundation for such testimony and that testimony was inadmissible hearsay. At an adjudicatory

hearing, "the rules of evidence in the nature of civil proceedings *** are applicable." 705 ILCS 405/2-18(1) (West 2020). "Foundation" refers to the rule that a lay witness may only testify to facts of which that witness has personal knowledge. *Selby v. O'Dea*, 2020 IL App (1st) 181951, ¶ 163; see also Ill. R. Evid. 602 (eff. Jan. 1, 2011) ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). Hearsay is generally not admissible (Ill. R. Evid. 802 (eff. Jan. 1, 2011)), but the statement of a party opponent is admissible as substantive evidence (Ill. R. Evid. 801(d)(2)(A) (eff. Jan. 1, 2011)).

¶ 30    Respondent has not established prejudice under *Strickland* with respect to the State's witnesses' testimony about her and L.C.'s history of domestic violence. As explained above, the trial court found M.R. to be abused and neglected because (1) respondent lost custody of E.C. in the year prior to M.R.'s birth, (2) respondent still had not completed DCFS services with respect to E.C. when M.R. was born, (3) respondent had not progressed to unsupervised visits with E.C., and (4) respondent and L.C. had a history of domestic violence. That is, respondent and L.C.'s history of domestic violence was merely one of four bases for the trial court's finding of neglect. Even if the evidence of domestic violence had been excluded by a sustained objection, the remaining evidence would have been more than sufficient to support a finding of anticipatory neglect based on respondent's abuse and neglect of E.C., failure to complete DCFS services, and failure to achieve unsupervised visits.[4] We cannot say that there is a reasonable probability that

---

[4] We cannot even say that the trial court would or could have sustained an objection to Kyriak-Lopez's testimony that respondent and L.C. had two prior indicated reports of domestic violence. While hearsay is inadmissible at an adjudicatory hearing (*In re G.V.*, 2018 IL App (3d) 180272, ¶ 28), the Act allows the admission of any indicated report filed pursuant to the Abused and Neglected Child Reporting

the result of the adjudicatory hearing would have been different if counsel made the objections that respondent now raises. See *Brown*, 2015 IL App (1st) 122940, ¶ 47. Respondent's claim of ineffective assistance, therefore, fails.

¶ 31    Respondent's citation to *People v. Simpson*, 2015 IL 116512, is unpersuasive because that case has little in common with this case. *Simpson* was a criminal jury trial in which our supreme court found that counsel rendered ineffective assistance by failing to object to a witness's video recorded statement that the defendant had confessed to him, which the State used as substantive evidence of the defendant's guilt. *Simpson*, 2015 IL 116512, ¶ 1. The case before us is not a criminal case, was not a jury trial, and did not involve any recorded confessions. *Simpson* provides little guidance in this case. Accordingly, we reject respondent's claim of ineffective assistance of counsel.

¶ 32                                    III. CONCLUSION

¶ 33    For the foregoing reasons, we affirm the order of the circuit court of Cook County.

¶ 34    Affirmed.

---

Act (325 ILCS 5/1 *et seq.* (West 2020)). 705 ILCS 405/2-18(4)(b) (West 2020). Although the State did not introduce the indicated reports of domestic violence themselves, if the reports were admissible, we cannot see how it was error for Kyriak-Lopez to testify that the reports existed.