Filed 4/24/08          NO. 4-07-0489

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: A.W., a Person Found Subject | ) | Appeal from |
| to Authorized Involuntary Treatment, | ) | Circuit Court of |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Sangamon County |
| Petitioner-Appellee, | ) | No. 07MH309 |
| v. | ) | |
| A.W., | ) | Honorable |
| Respondent-Appellant. | ) | George H. Ray, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the opinion of the court:

Following a May 2007 hearing, the trial court found respondent, A.W., subject to involuntary treatment (405 ILCS 5/2-107.1 (West 2006)).

Respondent appeals, arguing that (1) the State failed to prove by clear and convincing evidence that he was subject to involuntary treatment because no evidence showed that he was informed, in writing, of the risks and benefits of the recommended treatment, as well as alternatives to the recommended treatment; (2) the trial court's order authorizing involuntary treatment failed to comply with the Mental Health and Developmental Disabilities Code (405 ILCS 5/1-121.1, 1-121.5 (West 2006)) because it authorized specific dosages of psychotropic medication that were not supported by evidence as to those dosages; and (3) the court's order failed to comply with the Code (405 ILCS 5/2-107.1(a-5)(6) (West 2006)) because it authorized the administra-

tion of a nonpsychotropic medication. Because we agree with respondent's first argument, we reverse.

## I. BACKGROUND

In May 2007, Stacey Horstman, respondent's psychiatrist at McFarland Mental Health Center, filed a petition seeking to involuntarily administer treatment to respondent. The petition alleged that (1) respondent (a) had a mental illness, (b) refused to receive psychotropic medication, and (c) exhibited (i) deterioration of his ability to function, (ii) suffering, or (iii) threatening behavior; (2) respondent's mental illness had existed for a period of time marked by the continuing presence of symptoms or the repeated episodic occurrence of symptoms; (3) respondent lacked the capacity to make a reasoned decision about the psychotropic medication; (4) the benefits of the psychotropic medication clearly outweighed the harm; and (5) other, less-restrictive services were explored and found inappropriate. The petition requested the following medications: (1) Olanzapine (5 to 30 milligrams per day), (2) Risperidone "PO" (by mouth) (one to eight milligrams per day), (3) Risperidone long-lasting injection (25 to 50 milligrams every 14 days), and (4) Cogentin (one-half to six milligrams per day). The petition also requested the following testing and procedures necessary for the safe and effective administration of the requested medications: (1) "injection for IM [(intramuscular)] administration," and (2)

certain blood tests.

At the hearing on the petition, which was held later in May 2007, Horstman testified that respondent had been diagnosed with schizo-affective disorder, bipolar type. As a result of that mental illness, respondent developed paranoia, irritability, auditory hallucinations, and threatening behavior. Horstman explained that during the previous 10 days, respondent had "voiced a desire to kill gay people and threatened to kill white people as well." He also had specifically expressed a desire to kill his McFarland roommate and some staff members. Horstman opined that respondent lacked the capacity to give informed consent as to his treatment. She explained that he (1) had "very poor insight" into his illness and (2) did not think he was mentally ill or needed medication.

Horstman then testified that in the involuntary-treatment petition, she had requested (1) Olanzapine as the first-choice psychotropic medication, (2) Risperidone as an alternative psychotropic medication, and (3) Cogentin (a nonpsychotropic medication). Horstman opined that Olanzapine and Risperidone would "reduce [respondent's] manic and psychotic symptoms, reduce his paranoia, help him think more clearly, help him have better insight into his medical illness[,] and to appropriately deal with his medical conditions." She did not testify as to the anticipated dosage for either Olanzapine or Risperidone.

- 3 -

Horstman further opined that Cogentin would be used to reduce the side effects of the psychotropic medications.

Horstman acknowledged that the suggested psychotropic medications had possible side effects, including muscle tension, "restless tremors," weight gain, diabetes, and "tardive dyskinesia." She explained that respondent previously had received one dose of Olanzapine without any side effects. Horstman then testified as follows:

"Q. [PROSECUTOR:] Has he been made aware of the side effects of these medications?

A. He's been given written information but did not allow any verbal discussion and I don't know that he looked at that information.

Q. Did you try to talk with him about it?

A. Yes.

Q. And did he receive the list of side effects in writing, is that correct?

A. Yes, they were put in his box for him."

Horstman also stated that respondent would be monitored for possible side effects through certain testing and procedures.

- 4 -

Horstman opined that the potential benefits of the proposed medications clearly outweighed the potential harm if respondent did not receive them. She explained that it was likely that the proposed treatment would provide respondent "some recovery from his illness." Horstman further stated that other less-invasive treatment was inappropriate for respondent.

The trial court admitted in evidence the State's exhibit No. 1, which was a list of medical and nursing staff who were authorized to administer the requested medications to respondent.

Respondent testified that prior to his current hospitalization, he had lived in a motel and "in the wilderness." When asked if he was aware that Horstman had filed a petition seeking to involuntarily administer treatment, respondent testified as follows: "All they are doing is issuing a--the lawsuit. It seems like everything is political. I'm a democrat. It doesn't get any better when the leader was killed. They--I hate drugs."

Based on the evidence, the trial court found respondent subject, for a period not to exceed 90 days, to involuntary administration of the following psychotropic medications: (1) Olanzapine (5 to 30 milligrams per day), (2) Risperidone "PO" (one to eight milligrams per day), and (3) Risperidone long-lasting injection (25 to 50 milligrams every 14 days). The court

also authorized the administration of Cogentin (one-half to six milligrams per day), as well as the blood tests and other procedures Horstman requested.

This appeal followed.

## II. ANALYSIS

### A. The Mootness Doctrine in General

This appeal is moot. The underlying judgment, entered by the trial court on May 11, 2007, was limited to 90 days, which have passed.

An issue raised in an otherwise moot appeal may be addressed when (1) the immediacy or magnitude of the interests involved in the case warrants the reviewing court's action or (2) "the issue is '"likely to recur but unlikely to last long enough to allow appellate review to take place because of the intrinsically short-lived nature of the controversies."'[Citation.]" Felzak v. Hruby, 226 Ill. 2d 382, 392, 876 N.E.2d 650, 657 (2007).

The first exception to the mootness doctrine, known as the public-interest exception, applies only if a clear showing exists that (1) the question at issue is of "a substantial public nature," (2) an authoritative determination is needed to guide public officers in the performance of their duties, and (3) the circumstances are likely to recur in other cases. Felzak, 226 Ill. 2d at 393, 876 N.E.2d at 658; In re J.T., 221 Ill. 2d 338,

350, 851 N.E.2d 1, 8 (2006).  The public-interest exception must be "narrowly construed and requires a clear showing of each criterion."  Felzak, 226 Ill. 2d at 393, 876 N.E.2d at 658.

The second exception to the mootness doctrine (the capable-of-repetition exception) applies only if (1) the challenged action is of such short duration that it cannot be fully litigated prior to its cessation and (2) the same complaining party may reasonably be expected to be subject to the same action again.  Like the public-interest exception, the capable-of-repetition exception must be narrowly construed and requires a clear showing of each criterion.  J.T., 221 Ill. 2d at 350, 851 N.E.2d at 8.

In In re Alfred H.H., 4-07-0491, slip op. at 3-4 (March 11, 2008), ___ Ill. App. 3d ___, ___, ___ N.E.2d ___, ___, this court recently discussed the mootness doctrine in mental-health cases, as follows:

> "For the last several years, this court
> has rather routinely recognized an exception
> to the mootness doctrine in cases involving
> involuntary mental-health admission and in-
> voluntary mental-health treatment.  However,
> given the supreme court's clear, consistent,
> and recent adherence to the established ex-
> ceptions to the mootness doctrine without

- 7 -

regard to the type of cases before it, we conclude that Supreme Court of Illinois doctrine requires us to determine whether an otherwise moot appeal comes within an established exception to the mootness doctrine."

### B. The Public-Interest Exception to the Mootness Doctrine as Applied in This Case

#### 1. <u>Respondent's</u> <u>Claims</u> <u>That</u> <u>the</u> <u>Involuntary-Treatment</u> <u>Order</u> <u>Failed</u> <u>To</u> <u>Comply</u> <u>with</u> <u>the</u> <u>Code</u>

In this case, respondent argues, in part, that the trial court's involuntary-treatment order failed to comply with the Code (405 ILCS 5/1-121.1, 1-121.5, 2-107.1(a-5)(6) (West 2006)) because it authorized (1) the administration of a nonpsychotropic medication and (2) specific dosages of psychotropic medication that were not supported by evidence as to those dosages. Given that (1) strict compliance with statutory procedures is required based on the important liberty interests involved in involuntary-treatment cases (<u>In re Lisa G.C.</u>, 373 Ill. App. 3d 586, 590, 871 N.E.2d 794, 798 (2007)) and (2) our supreme court has stated that "the procedures courts must follow to authorize the involuntary medication of mental[-]health patients involve matters of 'substantial public concern'" (<u>In re Robert S.</u>, 213 Ill. 2d 30, 46, 820 N.E.2d 424, 434 (2004), quoting <u>In re Mary Ann P.</u>, 202 Ill. 2d 393, 402, 781 N.E.2d 237, 243 (2002)), respondent's arguments regarding the involuntary-

treatment order's compliance with the Code constitute questions of public importance. In addition, answers to respondent's arguments will provide an authoritative determination to guide public officers in the performance of their duties in mental-health cases. Finally, the circumstances in this case are likely to recur in other involuntary-treatment cases. Accordingly, we conclude that respondent clearly established the criteria necessary to satisfy the public-interest exception to the mootness doctrine. Because we so conclude, we need not address whether respondent also established the criteria necessary to satisfy the capable-of-repetition exception to the mootness doctrine.

2. Respondent's Claim That the Involuntary-Treatment
   Order Was Not Supported by Sufficient Evidence

Respondent also argues that the State failed to prove by clear and convincing evidence that he was subject to involuntary treatment. In Alfred H.H., slip op. at 4-6, ___ Ill. App. 3d at ___, ___ N.E.2d at ___, this court concluded that a routine sufficiency-of-the-evidence argument in a mental-health case did not come within either exception to the mootness doctrine. Nonetheless, because we are addressing the merits of respondent's statutory-compliance arguments under the public-interest exception, we also will consider the merits of respondent's sufficiency-of-the-evidence argument.

C. Respondent's Arguments on the Merits

1. Sufficiency of the Evidence To Support the Involuntary

- 9 -

## Administration of Psychotropic Medication

Respondent first argues that the trial court's finding that he was subject to involuntary administration of psychotropic medication was against the manifest weight of the evidence. Specifically, he contends that the State failed to show, by clear and convincing evidence, that he lacked the capacity to make a reasoned decision about the requested medications because no evidence showed that he was informed, in writing, of the risks and benefits of the recommended treatment, as well as alternatives to the recommended treatment. We agree.

Pursuant to section 2-107.1(a)(4) of the Code (405 ILCS 5/2-107.1(a)(4) (West 2006)), the involuntary administration of psychotropic medication may be ordered if the State proves, by clear and convincing evidence, the presence of the following factors: (1) the respondent has a serious mental illness; (2) because of that mental illness, the respondent exhibits any one of the following: (a) deterioration of his ability to function, (b) suffering, or (c) threatening behavior; (3) the illness has persisted for a period marked by the continuing presence of symptoms or the repeated episodic occurrence of these symptoms; (4) the benefits of the treatment outweigh the harm; (5) the respondent lacks the capacity to make a reasoned decision about the treatment; and (6) other, less-restrictive services have been explored and found inappropriate. In addition, section 2-102(a-

5) of the Code (405 ILCS 5/2-102(a-5) (West 2006)) provides as follows:

> "If the services include the administration of authorized involuntary treatment, the physician or the physician's designee shall advise the recipient, in writing, of the side effects, risks, and benefits of the treatment, as well as alternatives to the proposed treatment, to the extent such advice is consistent with the recipient's ability to understand the information communicated."

In *In re Louis S.*, 361 Ill. App. 3d 774, 780, 838 N.E.2d 226, 232 (2005), this court held that the State must present clear and convincing evidence that the respondent received written notification of the side effects, risks, and benefits of the treatment, as well as alternatives to the proposed treatment, as required by section 2-102(a-5) of the Code. In so holding, we noted that (1) verbal notification is insufficient to ensure a respondent's due-process rights, (2) "the right to written notification is not subject to a harmless-error analysis," and (3) strict compliance with the procedural safeguards of the Code is necessary to protect the liberty interests involved. *Louis S.*, 361 Ill. App. 3d at 780, 838 N.E.2d at 232-33. In *In re Dorothy J.N.*, 373 Ill. App. 3d 332, 336, 869 N.E.2d

413, 416 (2007), this court reaffirmed our holding in <u>Louis S.</u> We adhere to our holdings in <u>Louis S.</u> and <u>Dorothy J.N.</u>

The trial court must find evidence of each statutory element to authorize the involuntary administration of psychotropic medication. <u>Louis S.</u>, 361 Ill. App. 3d at 779, 838 N.E.2d at 231. We will not reverse the trial court's determination as to the involuntary administration of psychotropic medication unless it was against the manifest weight of the evidence. <u>In re Gail F.</u>, 365 Ill. App. 3d 439, 446, 849 N.E.2d 448, 454 (2006). "A judgment will be considered against the manifest weight of the evidence 'only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on evidence.'" <u>Louis S.</u>, 361 Ill. App. 3d at 779, 838 N.E.2d at 231, quoting <u>In re John R.</u>, 339 Ill. App. 3d 778, 781, 792 N.E.2d 350, 353 (2003).

Although Horstman's petition seeking to involuntarily treat respondent indicated that she had advised respondent, in writing, of the risks and benefits of the proposed treatment, she did not testify to that effect. Nor did Horstman testify that respondent was provided with written notification of alternatives to the proposed treatment. Instead, she testified only that she provided respondent with written notification of the side effects of the proposed treatment by placing the information in respondent's "box." Because the State failed to present any evidence

- 12 -

that respondent was informed of the risks and benefits of the proposed treatment, as well as alternatives to the proposed treatment, we conclude that the trial court's involuntary-treatment order was against the manifest weight of the evidence. Accordingly, we reverse the court's order.

In so concluding, we note that respondent does not contend that the State failed to provide written notification of the side effects of the proposed treatment, apparently conceding that Horstman's placing the written information in his "box" was sufficient. Contrary to respondent's concession, simply placing the written notification in a respondent's "box" (or anywhere other than in the respondent's hands--or at least an attempt to place the notification in his hands) is not sufficient. Instead, we urge the psychiatrist or her designee to follow the procedure suggested by Justice Steigmann in his special concurrence in Dorothy J.N. See Dorothy J.N., 373 Ill. App. 3d at 337-39, 869 N.E.2d at 418 (Steigmann, J., specially concurring). In particular, (1) the psychiatrist or her designee who comes into contact with the respondent should have prepared, in advance, a written list of the side effects, risks, and benefits of the proposed treatment, as well as alternatives to the proposed treatment; (2) during the psychiatrist's examination of the respondent, she should present a copy of the list to the respondent, thus complying with the requirement that the respondent be advised, in

writing, of that information "to the extent such advice is consistent with the recipient's ability to understand the information communicated" (405 ILCS 5/2-102(a-5) (West 2006)); and (3) the psychiatrist or her designee should attempt to explain the list's contents to the respondent.

Although we reverse the trial court's involuntary-treatment order, we address respondent's remaining arguments because their resolution will provide an authoritative determination to guide public officers in the performance of their duties in mental-health cases.

### 2. Respondent's Claim That the Involuntary-Treatment Order Was Not Supported by Evidence as to Specific Dosages of Psychotropic Medication

Respondent argues that the trial court's order authorizing involuntary treatment failed to comply with the Code (405 ILCS 5/1-121.1, 1-121.5 (West 2006)) because it authorized specific dosages of psychotropic medications that were not supported by evidence as to those dosages.  We agree.

Section 2-107.1(a-5)(6) of the Code provides that an involuntary-treatment order shall "specify the medications and the anticipated range of dosages that have been authorized."  405 ILCS 5/2-107.1(a-5)(6) (West 2006).  Although the Code does not explicitly require the State to establish by clear and convincing evidence the proposed medications and the anticipated range of dosages, section 2-107.1(a-5)(4)(D) (405 ILCS 5/2-107.1(a-

5)(4)(D) (West 2006)) provides that the State must prove by clear and convincing evidence that the benefits of the treatment outweigh the harm.  In Louis S., 361 Ill. App. 3d at 781, 838 N.E.2d at 233, quoting In re Len P., 302 Ill. App. 3d 281, 286, 285, 706 N.E.2d 104, 109, 108 (1999), this court noted that (1) the "'type of medication used is a necessary component of'" section 2-107.1(a-5)(4)(D) and (2) courts have "'generally required some evidence of the medications used.'"  We adhere to Louis S. and further hold that the State must present evidence as to the anticipated range of dosages of the proposed psychotropic medication.  To hold otherwise would mean that--as here--an involuntary-treatment order could be entered even though no evidence was presented to support the ordered dosages.

In so holding, we reject the State's contention that it is sufficient if the petition for involuntary treatment lists the specific requested dosages.  Absent (1) the trial court's (a) taking judicial notice of the anticipated dosages listed in the petition or (b) admitting in evidence the petition for the purpose of establishing the anticipated dosages or (2) testimony that the proposed psychotropic medications are requested in the dosages as they are listed in the petition, the petition's listing of anticipated dosages of the proposed psychotropic medication does not suffice.

    3.  Respondent's Claim That the Involuntary-Treatment Order Improperly Authorized the Administration

- 15 -

of a NonPsychotropic Medication

Respondent also argues that the trial court's order authorizing involuntary treatment failed to comply with the Code (405 ILCS 5/2-107.1(a-5)(6) (West 2006)) because it authorized the administration of Cogentin, a nonpsychotropic, side-effect-relieving medication. Specifically, he contends that (1) the Code authorizes the involuntary administration of psychotropic medications and (2) Cogention is not a psychotropic medication. We disagree.

In In re M.T., 371 Ill. App. 3d 318, 324-25, 862 N.E.2d 1079, 1084-85 (2007), the First District rejected the converse argument--that is, that an involuntary-treatment order should be reversed because the counteracting, side-effect-relieving medication was not requested in the petition or authorized by the trial court. We agree with M.T. that nothing in the Code requires that an involuntary-treatment petition or an involuntary-treatment order set forth proposed nonpsychotropic medications.

In addition, nothing in the Code prohibits (1) the petitioner from listing proposed nonpsychotropic medications in the involuntary-treatment petition or (2) the trial court from including such medications in its involuntary-treatment order, provided that testimony is presented regarding such medications. Simply put, in enacting the portions of the Code addressing involuntary treatment, the legislature was concerned with proce-

dures related to the involuntary administration of (1) psychotropic medications, (2) electroconvulsive therapy, and (3) "testing and procedures" related to the safe administration of psychotropic medications or electroconvulsive therapy. 405 ILCS 5/1-121.5 (West 2006). The legislature was not attempting to interject itself into the practice of medicine by dictating when a treating psychiatrist can administer medications to relieve side effects of psychotropic medications. See generally Mary Ann P., 202 Ill. 2d at 406, 781 N.E.2d at 245 (noting that "the diagnosis and treatment of mental health disorders is a '"highly specialized area of medicine which is better left to the experts."' [Citation.]"). Thus, we hold that it is within the psychiatrist's sole discretion whether to list the counteracting, side-effect-relieving, nonpsychotropic medications in the petition. If the psychiatrist chooses to do so and testifies as to the nonpsychotropic medication--as happened here--nothing prohibits the trial court from including the nonpsychotropic medication in its order.

In so holding, we reject respondent's contention that if a proposed psychotropic medication causes side effects, the only recourse under the Code is to discontinue the administration of that medication. Accepting respondent's contention would (1) severely restrict the psychotropic medications that are available to treat mental-health patients and (2) interfere with psychia-

- 17 -

trists' practice of medicine.

### III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment.

Reversed.

APPLETON, P.J., and COOK, J., concur.