# Illinois Official Reports

## Appellate Court

---

### *In re Maureen D.*, 2015 IL App (1st) 141517

---

| | |
|---|---|
| Appellate Court Caption | *In re* MAUREEN D., Found to Be a Person Subject to Involuntary Medication (The People of the State of Illinois, Petitioner-Appellee, v. Maureen D., Respondent-Appellant). |
| District & No. | First District, Sixth Division<br>Docket No. 1-14-1517 |
| Filed<br>Rehearing denied | August 14, 2015<br>September 10, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2014-COMH-000812; the Hon. Paul A. Karkula, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Ann Krasuski, of Guardianship & Advocacy Commission, of Hines, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Assistant State's Attorney, of counsel), for the People. |
| Panel | JUSTICE ROCHFORD delivered the judgment of the court, with opinion.<br>Presiding Justice Hoffman and Justice Lampkin concurred in the judgment and opinion. |

**OPINION**

¶ 1 Respondent, Maureen D., appeals the order of the trial court authorizing the involuntary administration of psychotropic medications to her pursuant to section 2-107.1(a-5)(4) of the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/2-107.1(a-5)(4) (West 2014)). Respondent contends the State failed to prove by clear and convincing evidence that she was subject to involuntary treatment because no evidence showed she was advised, in writing, of the side effects, risks and benefits of the psychotropic medications as well as alternatives thereto as required by section 2-102(a-5) of the Mental Health Code (405 ILCS 5/2-102(a-5) (West 2014)). We affirm.

¶ 2                                    I. BACKGROUND
¶ 3 Dr. James Corcoran, a psychiatrist, filed a petition seeking to involuntarily administer psychotropic medications to respondent pursuant to section 2-107.1(a-5)(4) of the Mental Health Code. Section 2-107.1(a-5)(4) provides:

> "(4) Psychotropic medication and electroconvulsive therapy may be administered to the recipient if and only if it has been determined by clear and convincing evidence that all of the following factors are present. ***
>
>> (A) That the recipient has a serious mental illness or developmental disability.
>>
>> (B) That because of said mental illness or developmental disability, the recipient currently exhibits any one of the following: (i) deterioration of his or her ability to function, as compared to the recipient's ability to function prior to the current onset of symptoms of the mental illness or disability for which treatment is presently sought, (ii) suffering, or (iii) threatening behavior.
>>
>> (C) That the illness or disability has existed for a period marked by the continuing presence of the symptoms set forth in item (B) of this subdivision (4) or the repeated episodic occurrence of these symptoms.
>>
>> (D) That the benefits of the treatment outweigh the harm.
>>
>> (E) That the *recipient lacks the capacity to make a reasoned decision about the treatment*.
>>
>> (F) That other less restrictive services have been explored and found inappropriate.
>>
>> (G) If the petition seeks authorization for testing and other procedures, that such testing and procedures are essential for the safe and effective administration of the treatment." (Emphasis added.) 405 ILCS 5/2-107.1(a-5)(4) (West 2014).

¶ 4 Before respondent can make a reasoned decision about her medications, she first must be advised about their risks and benefits. *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 13. Pursuant thereto, section 2-102(a-5) of the Mental Health Code provides in pertinent part:

> "If the services include the administration of *** psychotropic medication, the physician or the physician's designee shall advise the recipient, in writing, of the side effects, risks, and benefits of the treatment, as well as alternatives to the proposed treatment, to the extent such advice is consistent with the recipient's ability to understand the information communicated." 405 ILCS 5/2-102(a-5) (West 2014).

¶ 5     "The rationale underlying the requirements of section 2-102(a-5) is to not only ensure that a respondent is fully informed, but also 'to ensure that a respondent's due process rights are met and protected.' [Citation.] Strict compliance is necessary to guard a respondent's fundamental liberty interest in refusing invasive medication [Citation.] Verbal notification is insufficient and the right to receive written notification under section 2-102(a-5) cannot be waived by a respondent." *In re Nicholas L.*, 407 Ill. App. 3d 1061, 1072 (2011).

¶ 6                                    II. THE HEARING

¶ 7     At the hearing on the petition on April 18, 2014, respondent's sister, Mary S., testified respondent was diagnosed with a personality disorder in 1990 and hospitalized at MacNeal Hospital in Berwyn. Respondent was hospitalized again in 1994 at Northwestern Memorial Hospital and diagnosed as bipolar. She was prescribed medications, specifically, Lithium and Stelazine. Upon her discharge from Northwestern Memorial Hospital, respondent received outpatient treatment from Dr. Burton, her psychologist, for several years and continued to take the medications. During that time period, respondent did "very well"; she owned her own condominium, ran marathons, got along with her family, and "looked great."

¶ 8     Around 2006 or 2007, respondent lost her job and stopped taking her medications. Without her medications, respondent became "progressively paranoid," believing everybody was against her and that Mary S. was abusing their mother. Mary S. last saw respondent in 2011, about three years prior to the hearing.

¶ 9     Dr. Corcoran testified he is a psychiatrist who works full-time as the medical director at Chicago-Read Mental Health Center (Chicago-Read) and he also works part-time for the Du Page County jail. Dr. Corcoran testified that in 2013, respondent was briefly hospitalized at Chicago-Read for causing a disturbance at the Chicago Public Library. She refused treatment and was subsequently discharged.

¶ 10    Dr. Corcoran testified that later, in October 2013, respondent fell into arrears in her payments to the condominium association and eviction proceedings were initiated. When the sheriff tried to serve her, she refused to open the door and the sheriff forced it open. Respondent was then taken into custody and charged with misdemeanor obstruction of service. In December 2013, respondent was found unfit to stand trial on the misdemeanor charge and she stayed in jail while waiting for placement at a minimum-security facility. When a bed opened up at Chicago-Read on January 29, 2014, respondent was transferred there to be restored to fitness.

¶ 11    Dr. Corcoran evaluated respondent in February 2014, and he also performed subsequent evaluations. During many of the evaluations, respondent asked questions Dr. Corcoran was unable to answer, an "explosive argument" ensued, and respondent spoke and shouted in a "monologue of 5 to 10 solid minutes." Dr. Corcoran was then "able to maybe ask a question, *** but the answer [he] got was confusing, disorganized and based on delusions."

¶ 12    Dr. Corcoran opined that respondent suffers from bipolar affective disorder, manic type, and was currently symptomatic. Respondent talks about a conspiracy of gang members and Serbian/Baltic Nazis in her neighborhood who attempted to get her evicted. Respondent also has suffered socioeconomic decline because, although she had worked various jobs in the past, she has not worked recently.

¶ 13　　Dr. Corcoran testified that respondent exhibits "suffering behavior" in that when he tries to talk to her, she appears quite anguished and agitated and she shouts and screams. Respondent has exhibited threatening behavior, specifically, when she engaged in some type of "altercation" with the sheriff who attempted to serve her during the eviction proceedings, and also on February 14, 2014, when she was so resistive to medication that she was placed in a "physical hold." Respondent also was placed on a phone restriction at Chicago-Read because she was making harassing phone calls to the Cook County sheriff's office.

¶ 14　　Dr. Corcoran testified about the psychotropic medications he wanted to administer to respondent, their dosages, side effects, and benefits. He requested to administer Lithium, which respondent has taken before, and several other medications. Dr. Corcoran also testified he attempted to give respondent written information in February 2014 and again on March 17, 2014, regarding the psychotropic medications he wanted to administer, including their benefits and side effects, as well as the nonmedical alternatives to the proposed treatment. In response to the written information, respondent stated: "I don't need that. I don't need medication."

¶ 15　　Dr. Corcoran testified that respondent does not have the capacity to make a reasoned judgment about the treatment he was seeking for her. When asked why not, Dr. Corcoran explained: "Because her paranoid delusions about what has happened in her life and the deterioration that she has experienced are so heavily ingrained at this point that she is not able to listen to reason." Dr. Corcoran has explored less restrictive alternatives to psychotropic medications, such as group and individual therapy, but he found them to be inappropriate for respondent given her lack of insight into her illness. Dr. Corcoran opined that the benefits of the psychotropic medications outweighed their harm and that without administration of the psychotropic medications, respondent's prognosis was "very poor."

¶ 16　　On cross-examination, Dr. Corcoran testified in pertinent part:

"Q. And when you were talking about the written information about the treatment, your written information about the medication–

A. Yes.

Q. You testified that you attempted to give the information. What do you mean by attempted?

A. I handed it to her, and she walked away from me.

Q. Okay. Did she take it in her hands?

A. No. I left it on the counter in the nursing station because she walked away.

Q. Okay.

A. I said [to respondent] here's some information about medication. This was some time ago when I thought originally that she may have the capacity to consent to medication, and I have since realized that she doesn't.

Q. Okay. So you left the papers on the counter? Did you take them and put them on her nightstand or on her bed?

A. I'm not allowed in her room. I don't go into a female patient room."

¶ 17　　Following Dr. Corcoran's testimony, respondent was called to testify, but she stated that she preferred to read a statement. The court refused to allow respondent to read her statement, and she did not testify.

¶ 18    Following all the testimony and closing arguments, the trial court granted Dr. Corcoran's petition to involuntarily administer psychotropic medications to respondent. Respondent now appeals, contending the State failed to prove by clear and convincing evidence that she was subject to involuntary administration of psychotropic medications because no evidence showed she was advised, in writing, of the side effects, risks and benefits of these medications as well as alternatives thereto as required by section 2-102(a-5) of the Mental Health Code.

¶ 19                                    III. ANALYSIS

¶ 20    Initially, we note the underlying judgment, entered on April 18, 2014, was limited to 90 days, which have passed. Therefore, we cannot grant respondent any effectual relief and her appeal is moot. See *In re Robert S.*, 213 Ill. 2d 30, 45 (2004) (holding that after the 90-day period for the administration of involuntary treatment has passed, the circuit court's order no longer has any force or effect, the reviewing court cannot grant any meaningful relief and, therefore, the case is moot and any decision would be advisory in nature). See also *In re Nicholas L.*, 407 Ill. App. 3d at 1070 ("An appeal is moot when no actual controversy is presented or when the issues raised in the trial court have ceased to exist, rendering it impossible for the court of review to grant effectual relief to the appellant."); *People v. Hill*, 2011 IL 110928, ¶ 6 ("The mootness doctrine provides that we must dismiss an appeal when the issues involved have ceased to exist because intervening events have made it impossible for us to grant effectual relief.").

¶ 21    However, respondent argues we should reach the merits of her appeal based on the public interest exception to the mootness doctrine and the "capable of repetition yet avoiding review" exception to the mootness doctrine. We agree. Our supreme court has stated:

> "The public interest exception allows a court to consider an otherwise moot case when (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question." *In re Alfred H.H.*, 233 Ill. 2d 345, 355 (2009).

¶ 22    In the present case, the question presented by respondent involves whether section 2-102(a-5) of the Mental Health Code was sufficiently complied with, which we have held "qualifies as a matter of a public nature." *In re Nicholas L.*, 407 Ill. App. 3d at 1071. See also *In re Robert S.*, 213 Ill. 2d at 46 ("the procedures courts must follow to authorize the involuntary medication of mental health patients involve matters of 'substantial public concern' " (quoting *In re Mary Ann P.*, 202 Ill. 2d 393, 402 (2002))). "Moreover, the vast number of cases addressing the issue of compliance with section 2-102(a-5) (see, *e.g.*, *In re Alaka W.*, 379 Ill. App. 3d 251, 263-64 (2008); *In re Dorothy J.N.*, 373 Ill. App. 3d 332, 336-37 (2007)) indicates both a need for an authoritative determination for the future guidance of public officers and the likelihood of future recurrence." *In re Nicholas L.*, 407 Ill. App. 3d at 1071. Accordingly, the public interest exception to the mootness doctrine is applicable here. See *In re Robert S.*, 213 Ill. 2d at 45-46 (applying the public interest exception to consider respondent's appeal from an order authorizing the involuntary administration of psychotropic medication, even though more than 90 days had passed and the circuit court's order no longer had any force or effect).

¶ 23    The "capable of repetition yet avoiding review" exception also applies here. This exception has two elements. "First, the challenged action must be of a duration too short to be fully litigated prior to its cessation. Second, there must be a reasonable expectation that 'the same complaining party would be subjected to the same action again.' " *In re Alfred H.H.*, 233 Ill. 2d at 358 (quoting *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998)).

¶ 24    In the present case, the parties agree the first element has been met because the trial court's involuntary medication order lasted only 90 days. The second element also has been met. The record indicates respondent was prescribed psychotropic medications in the past; is likely to be prescribed these medications in the future due to the ongoing nature of her illness; and, given her history of refusing such medications and the written information about them, she will again refuse to accept any written information about such medications. Thus, there is a reasonable expectation that respondent would be subjected to the same action, involving the same issue, as here; accordingly, we will address respondent's appeal on the merits. See *In re Katarzyna G.*, 2013 IL App (2d) 120807, ¶ 9 (holding that respondent's appeal from an order authorizing the involuntary administration of psychotropic medication, in which she raised an issue involving the propriety of the written information she was given about the medication, involved a question capable of repetition yet avoiding review sufficient to allow the reviewing court to "bypass mootness and consider the merits of [the] appeal").

¶ 25    On the merits, respondent argues that the State failed to show by clear and convincing evidence that she lacked the capacity to make a reasoned decision about the requested psychotropic medications as required by section 2-107.1(a-5)(4) of the Mental Health Code because no evidence showed she was advised, in writing, of the risks, benefits and side effects of the medications, as well as alternatives thereto, as required by section 2-102(a-5). Respondent contends that although Dr. Corcoran twice attempted to give her this written information, he failed in his attempts when she walked away from him without taking it and so then he left the information on the counter at the nurses' station. Respondent argues that leaving the written information on the counter at the nurses' station was not sufficient to comply with section 2-102(a-5) and that, at the very least, Dr. Corcoran should have left the information on her nightstand, or in her room or her "personal area" where she would have the opportunity to read it at a time and manner of her choosing. Respondent contends that Dr. Corcoran's failure to comply with section 2-102(a-5) means that the State failed to meet its burden of proving that she lacked the capacity to make a reasoned decision about her treatment and, therefore, we must reverse the order for the involuntary administration of psychotropic medications.[1]

---

[1]Respondent makes no argument that the written information Dr. Corcoran attempted to provide her regarding the psychotropic medications was in any way deficient, *i.e.*, that it failed to inform her of the risks, benefits, and side effects of the medications and any alternatives and accordingly the issue is waived (see Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013)); further, the written information was not included in the record on appeal and therefore any issue involving the sufficiency of the information is resolved against respondent, the appellant, who has the duty to provide a complete record on appeal. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Rather, the only issue preserved for review is respondent's contention that since Dr. Corcoran attempted, but failed, to hand her the written information, and then left it on the counter at the nurses' station, section 2-102(a-5) was not complied with and we should reverse the order authorizing the involuntary administration of the psychotropic medications.

¶ 26       We review *de novo* whether Dr. Corcoran complied with section 2-102(a-5) here. *Id.* ¶ 13. When examining the trial court's order authorizing the involuntary administration of psychotropic medications, we will not reverse the order unless it was against the manifest weight of the evidence such that the opposite conclusion was apparent or the findings were unreasonable, arbitrary, or not based on the evidence. *In re A.W.*, 381 Ill. App. 3d 950, 957 (2008).

¶ 27       *In re A.W.* is dispositive on the issue of whether Dr. Corcoran complied with section 2-102(a-5). A.W.'s psychiatrist at McFarland Mental Health Center filed a petition seeking to involuntarily administer psychotropic medication to him. *Id.* at 952. At the hearing on the petition, the psychiatrist testified in pertinent part that certain written information regarding A.W.'s medication was " 'put in his box for him.' " *Id.* at 953. The trial court subsequently granted the petition. *Id.* at 954. A.W. appealed. *Id.*

¶ 28       This court stated:

> "[S]imply placing the written notification in a respondent's 'box' (or anywhere other than in the respondent's hands–or at least an *attempt* to place the notification in his hands) is not sufficient [to comply with section 2-102(a-5)]. Instead, we urge the psychiatrist or her designee to follow the procedure suggested by Justice Steigmann in his special concurrence in *Dorothy J.N.* See *Dorothy J.N.*, 373 Ill. App. 3d at 337-39 *** (Steigmann, J., specially concurring). In particular, (1) the psychiatrist or her designee who comes into contact with the respondent should have prepared, in advance, a written list of the side effects, risks, and benefits of the proposed treatment, as well as alternatives to the proposed treatment; (2) during the psychiatrist's examination of the respondent, she should present a copy of the list to the respondent, thus complying with the requirement that the respondent be advised, in writing, of that information 'to the extent such advice is consistent with the recipient's ability to understand the information communicated' (405 ILCS 5/2-102(a-5) (West 2006)); and (3) the psychiatrist or her designee should *attempt* to explain the list's contents to the respondent." (Emphases added.) *Id.* at 958.

¶ 29       Thus, *In re A.W.* held that to comply with section 2-102(a-5), the psychiatrist or his designee should present the written information advising of the side effects, risks and benefits of the treatment to respondent, ideally by placing the information in her hands. *Id.* However, since respondent cannot be forced to accept such a tender of the written information against her will, section 2-102(a-5) is complied with as long as the psychiatrist or his designee *attempts* to place the information in respondent's hands, even if the attempt is unsuccessful. *Id.* Further, although not expressly required by section 2-102(a-5), the psychiatrist or his designee also should attempt to explain the contents of the written information to respondent, *i.e.*, respondent should at least be told that the written information addresses her proposed treatment. *Id.*

¶ 30       Dr. Corcoran's undisputed trial testimony indicates he made two attempts to present respondent with written information regarding her proposed psychotropic medications, once in February 2014 and again on March 17, 2014, when he handed her the information and he said to her: "Here's some information about medication." However, respondent refused to accept the tenders of the written information, stating she does not need medication, and she walked away from Dr. Corcoran, thus ending any further discussion. Only *after* respondent refused to accept the tenders of the written information did Dr. Corcoran place it on the

counter in the nurses' station. Dr. Corcoran's two attempts to tender the written information to respondent in February and March 2014 satisfied the requirement of section 2-102(a-5), even though respondent refused to accept the tenders and walked away. Contrary to respondent's argument, neither section 2-102(a-5), nor the interpreting case law obliged Dr. Corcoran to leave the written information in any particular place (such as her nightstand, or in her room, or "personal area") upon her refusal to take it.

¶ 31    Accordingly, as Dr. Corcoran testified to his compliance with section 2-102(a-5) and to respondent's lack of capacity to make a reasoned decision about her treatment, the State met its burden of proof regarding her lack of capacity and the trial court's order authorizing the involuntary administration of the psychotropic medications was not against the manifest weight of the evidence.

¶ 32    For the foregoing reasons, we affirm the circuit court.

¶ 33    Affirmed.