2021 IL App (1st) 200357-U

No. 1-20-0357

Order filed August 12, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| IN RE: GERTRUDE N., a Person Found Subject to Involuntary Medication | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois |
| (The People of the State of Illinois, | ) ) | |
| Petitioner-Appellee, | ) ) | No. 20 COMH 00097 |
| v. | ) ) | |
| Gertrude N., | ) ) | Honorable Paul Karkula, |
| Respondent-Appellant.) | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1     *Held*: Patient's appeal is moot where the trial court's judgment was limited to 90 days, which has passed, and patient failed to clearly establish the criteria necessary to satisfy either (1) the public-interest exception, or (2) the capable of repetition yet avoiding review exception to the mootness doctrine.

¶ 2     Respondent, Gertrude N., is a 40-year-old woman with a history of mental illness. On January 9, 2020, Gertrude's treating psychiatrist filed a petition in the circuit court of Cook County seeking involuntary treatment of Gertrude, pursuant to the Mental Health and Developmental

Disabilities Code (Mental Health Code). 405 ILCS 5/2-107.1 (West 2020). On January 27, 2020, following a hearing on the petition, the circuit court ordered the involuntary administration of psychotropic medication. Gertrude appeals this decision, arguing (1) the circuit court erred where it (a) failed to consider a less restrictive service for treatment, and (b) found that the petitioner satisfied statutory notice requirements; and (2) this case is not moot where it falls within two recognized exceptions to the mootness doctrine and should be decided on the merits. We dismiss the appeal as moot where no exceptions to the mootness doctrine apply.[1]

¶ 3                                               I. JURISDICTION

¶ 4        The circuit court ordered the involuntary treatment of Gertrude on January 27, 2020. On February 19, 2020, Gertrude filed a timely notice of appeal. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1980, art. VI, § 6) and Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303(a) (eff. July 1, 2017), governing appeals from a final judgment of a circuit court in a civil case.

¶ 5                                               II. BACKGROUND

¶ 6        Gertrude N. is a 40-year-old woman with a history of mental illness. Prior to the instant case, Gertrude had received mental health treatment on numerous occasions and was previously adjudicated disabled by the circuit court of Cook County. In January 2020, Doctor Jonathan Howard, Gertrude's treating psychiatrist, filed a petition for the involuntary administration of psychotropic medication pursuant to section 2-107.1 of the Mental Health Code. 405 ILCS 5/2-107.1 (West 2020).

¶ 7        The petition alleged that (1) Gertrude has a serious mental illness or developmental disability; (2) because of her mental illness or developmental disability Gertrude exhibits (a)

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

deterioration of her ability to function, as compared to her ability to function prior to the current onset of symptoms for which treatment is presently sought, and (b) threatening behavior; (3) the illness or disability has existed for a period marked by either the continuing presence of the symptoms set forth in item (1) above, or the repeated episodic occurrence of these symptoms; (4) the benefits of the treatment outweigh the harm; (5) Gertrude lacks the capacity to make a reasoned decision about the treatment; (6) other less restrictive services were explored and found inappropriate; (7) if the petition seeks authorization for testing and other procedures, the testing and procedures are essential for the safe and effective administration of the treatment; (8) the petitioner has made a good faith attempt to determine whether Gertrude has executed a power of attorney for health care or a declaration for mental health treatment; and (9) Gertrude was advised in writing of the side effects, risks, and benefits of each of the medications or treatments requested as well as alternatives thereof. Specifically regarding less restrictive services, the petition alleged that the following services were explored and found inappropriate: (1) group therapy; (2) individual counseling; (3) milieu therapy; (4) behavioral modification; and (5) contingency management.

¶ 8    On January 27, 2020, the circuit court conducted a hearing on the petition for the involuntary administration of psychotropic medication. The State presented the testimony of Doctor Jonathan Howard and the parties stipulated to his qualifications as an expert in the field of psychiatry. Gertrude was admitted to Cermak Health Services (Cermak) on October 28, 2019, and Howard testified he had been her treating psychiatrist at Cermak since November 6, 2019. Previously, Howard had been Gertrude's attending psychiatrist twice in 2015, once in 2016, and once in 2017. Gertrude was first seen at Cermak in October of 2010.

¶ 9        During this admittance, Gertrude was immediately transferred to P4—the acute psychiatric unit at Cermak—where she had episodes of threatening nurses and other staff. During Howard's initial evaluation of Gertrude, she was (1) disorganized in motor, thought, and speech; (2) pacing; (3) uncooperative; and (4) highly agitated. Thereafter, Gertrude had "countless" episodes of threatening staff. Howard shared three specific instances of Gertrude's threatening behavior. Specifically, on November 10, 2019, Gertrude assaulted her roommate. On December 6, 2019, Gertrude, unprovoked, punched an officer in the face. Thereafter, on December 14, 2019, she was aggressive towards a sergeant on her unit and bumped into him. After observing Gertrude's behavior during her stay, reviewing her medical records, and discussing her condition with peers, Howard opined that Gertrude suffers from schizoaffective disorder and is paranoid.

¶ 10       Doctor Howard testified Gertrude had been symptomatic for the entire time she had been at Cermak. Her symptoms included: hearing voices, experiencing auditory hallucinations, responding to internal stimuli, psychomotor agitation and disorganization, and extreme paranoia. As of December 12, 2019, Gertrude had been kept in "alone status," in a single room to prevent her from having altercations with other individuals. Howard stated Gertrude had nonetheless been noncompliant with her treatment and began "cheeking"[2] the prescribed psychotropic medication. Subsequently, he ordered Gertrude's medicine to be crushed and mixed with juice so that diversion would be much more difficult. He stated Gertrude was unresponsive, her personal hygiene was dismal, and she lacked insight into her condition. Howard opined that Gertrude's condition had deteriorated substantially and noted she was "so disorganized, broken from reality that she is incapable of answering questions about these matters."

---

[2]Howard testified that "cheeking" medication is a form of diverting medication by tucking a pill between one's gum and cheek, and then spitting the medication out.

¶ 11　　Therefore, it was Howard's professional opinion that Gertrude needed to be on psychotropic medication. He was thoroughly questioned regarding all proposed medication, their dosages, all associated potential side effects, and all laboratory tests required to safely administer the medications. Howard reaffirmed that, even with his concerns that she was treatment refractory[3], the benefits to Gertrude would outweigh any possible harm from the medication.[4] While he believed there was an ideal medication—Clozapine—for Gertrude, he was not currently seeking authorization to administer it because weekly blood draws would be required to monitor its potential for causing a reduced white blood cell count.

¶ 12　　In reaching his treatment plan, Howard had first considered less restrictive treatment alternatives for Gertrude. Specifically, group therapy, individual therapy, counseling, medication counseling, and talk therapy had all been explored as potential treatment alternatives. However, Howard opined that all of these less restrictive alternatives would be "wholly ineffective" without the administration of psychotropic medications. Further, Howard testified that no therapies were a viable option for primary or alternative treatments for Gertrude and that, without medication, she would continue to deteriorate and become increasingly violent. Howard testified that he had a long-term plan for Gertrude, which included her parents working to construct—with the help of the Guardian and Advocacy Commission—a mental health declaration for treatment.

¶ 13　　When questioned whether Gertrude's guardians received notification regarding the petition and hearing, Howard testified that, on January 17, 2020, Gertrude's father was sent the involuntary medication petition and the date for the hearing. Gertrude, on the other hand, was notified on

---

[3]Howard explained that if a patient is treatment refractory, it means those individuals—when using conventional doses of medication that are otherwise effective in a large percentage of the patient population—do not respond robustly in terms of reduction in symptoms and increased functionality.

[4]Howard testified that, in the past, Gertrude had experienced some side effects from the medication he was currently seeking, including a tremor in her right arm.

January 8, 2020—the day Howard testified he filed the petition. On cross-examination, he stated that, in the past, he was aware that both Gertrude's mother and her father were listed as guardians in her paperwork. However, Howard could only confirm that communication was made with Gertrude's father. Howard further testified that nobody had asked Gertrude's guardians to consent to psychotropic medication and he had not spoken with them regarding her current care.

¶ 14    In closing, Gertrude's counsel argued that (1) the benefits of involuntary medication do not outweigh the risks and the proposed harm, where there is a "preferred ideal drug" for Gertrude; and (2) the State did not prove by clear and convincing evidence that Gertrude's guardians were given proper notice of the hearing. The State argued they (1) gave clear and convincing evidence that Gertrude's guardian was properly contacted and (2) Gertrude's ability to function had deteriorated such that she was in need of psychotropic medication.

¶ 15    The court found that notice was properly given to Gertrude's guardian where (1) the doctor presented clear and convincing testimony that Gertrude's guardian was given notice; (2) the note the doctor referred to during testimony was confirmed by the social worker who mailed the notice; and (3) Gertrude's guardian was present in open court in a courtroom that was difficult to find. The court further found that Gertrude had been suffering from a serious mental illness for at least a decade, had had many prior hospitalizations for that illness, and had been previously determined to be unfit to stand trial. Moreover, the court determined Gertrude (1) was disorganized in motor, thought, and speech process; (2) had threatened staff; (3) had exhibited very aggressive behavior during her stay at Cermak; (4) was suffering from auditory hallucinations; (5) responded to internal stimuli; (6) was paranoid; (7) had a basic inability to communicate; and (8) exhibited extremely poor self-care. Consequently, the court granted the petition to involuntarily administer psychotropic medication for a period of 90 days.

¶ 16                                  III. ANALYSIS

¶ 17          Gertrude appeals this circuit court's ruling, arguing (1) the circuit court erred where it (a) failed to consider a less restrictive service for treatment, and (b) found that the petitioner satisfied statutory notice requirements; and (2) this case is not moot where it falls within two recognized exceptions to the mootness doctrine and should be decided on the merits.

¶ 18          There is no dispute that this case is moot. "An appeal is moot if no controversy exists or if events have occurred which foreclose the reviewing court from granting effectual relief to the complaining party." *In re Shelby R.*, 2013 IL 114994, ¶ 15. In the instant case, the parties agree that the circuit court's January 27, 2020 involuntary medication order was only in effect for 90 days, pursuant to section 2-107.1 of the Mental Health Code. 405 ILCS 5/2-107.1(a-5)(5) (West 2020). The order expired on April 26, 2020. Therefore, we agree that the underlying case is moot. As the original judgment has no effect, Gertrude could only be involuntarily administered medication if a new petition were filed, and a new hearing was conducted. Nonetheless, Gertrude argues we should review the substance of the appeal, as her two contentions of error fall within two recognized exceptions to the mootness doctrine: the public-interest exception, and the exception for issues capable of repetition yet evading review.

¶ 19          "As a general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). Although "there is no *per se* exception to mootness that universally applies to mental health cases," there are recognized mootness exceptions. *Id*. at 355. The three recognized exceptions to the mootness doctrine are (1) the public interest exception; (2) the "capable of repetition yet avoiding review" exception; and (3) the collateral consequences exception. *In re Dawn H.*, 2012 IL App (2d) 111013, ¶ 13 (2012) (citing

*In re Val Q.*, 396 Ill. App. 3d 155, 159 (2009)). When evaluating if a mootness exception applies, the court must conduct a case-specific analysis " 'consider[ing] all the applicable exceptions in light of the relevant facts and legal claims raised in the appeal.' " *In re Rita P.*, 2014 IL 115798, ¶ 32 (quoting *Alfred H.H.*, 233 Ill. 2d at 364).

¶ 20                                A. Public Interest Exception

¶ 21        Gertrude first contends that the public interest exception applies to her case. The public interest exception must be narrowly construed and applies only when there is a clear showing that " '(1) the question presented is of a public nature; (2) an authoritative determination of the question is desirable for the future guidance of public officers; and (3) the question is likely to recur.' " *Id*. ¶ 36 (quoting *Shelby R.*, 2013 IL 114994, ¶ 16).

¶ 22        Whether the circuit court erred when it failed to consider a less restrictive service for treatment, Gertrude asserts that the public interest exception is met because (1) the question presented is an important issue of a public nature; (2) there is a strong desire that this Court provide guidance to practitioners and courts regarding the statutory mechanisms where the record demonstrates the petitioning party was unaware of certain treatment avenues; and (3) this issue will likely recur because Gertrude lives with a chronic mental illness.

¶ 23        The first issue presented in this appeal does not present an issue of a public nature. Gertrude argues the first criterion is met because the issue of whether guardians may consent to treatment for a non-objecting ward presents an important issue for all Illinois families. It is well-settled that proceedings under the Mental Health Code are generally "matters of a public nature and of substantial public concern." *In re Mary Ann P.*, 202 Ill. 2d 393, 402 (2002). Additionally, as important liberty interests are indicated in cases with involuntary treatment, there must be strict compliance with statutory procedures. See *In re Louis S.*, 361 Ill. App. 3d 774, 780 (2005); *In re*

*A.W.*, 381 Ill. App. 3d 950, 955 (2008). However, case-specific inquiries do not present broad public interest issues. See, *e.g.*, *Alfred H.H.*, 233 Ill. 2d at 356-57. While the instant issue concerns statutory compliance under the Mental Health Code, the inquiry is not of a substantial public nature where it presents a case-specific inquiry. The plain language of section 2-107.1(a-5)(4) of the Mental Health Code already mandates that psychotropic medication may be administered to a patient if and only if it has been determined by clear and convincing evidence that, *inter alia*, "other less restrictive services have been explored and found inappropriate." 405 ILCS 5/2-107.1(a-5)(4) (West 2020). Furthermore, section 2-107.1(c) clearly provides that "a guardian may consent to the administration of psychotropic medication *** to a non-objecting recipient under Article XIa of the Probate Act of 1975." 405 ILCS 5/2-107.1(c) (West 2020).

¶ 24    Gertrude does not contend that the circuit court routinely misapprehends or neglects the requirements of the aforementioned sections. Nor does she argue there is some insufficiency or ambiguity in the language of the statute. Instead, Gertrude requests that we assess whether the circuit court's compliance with sections 2-107.1(a-5)(4) and 2-107.1(c) was sufficient in this particular case. See 405 ILCS 5/2-107.1(a-5)(4), (c). Specifically, she argues the circuit court neglected to follow the statutory requirements of the Mental Health Code when it failed to consider a less restrictive service for treatment, whereby her guardians could have consented to the administration of psychotropic medication. Contrary to her assertions, this is not a matter of broad public nature. Rather, this is a narrowly tailored inquiry specifically related to the particular facts of her case. Accordingly, we conclude that the first criterion has not been satisfied where the matter is case-specific and does not have sufficient breadth to satisfy the public nature criterion.

¶ 25 As Gertrude failed to establish the first criterion for her first argument on appeal, and all criteria of the public interest exception must be shown to address a moot issue (*Rita P.*, 2014 IL 115798, ¶ 36), we need not address the second and third criteria.

¶ 26 Gertrude next argues that the circuit court erred when it found that the petitioner satisfied statutory notice requirements. Gertrude asserts that the public interest exception is met because (1) notice requirements for co-guardians are of a public nature; (2) this may be an issue of first impression, and it appears the circuit court was unfamiliar or disinterested in recognizing the provisions of 405 ILCS 5/2-107.1(c); and (3) this issue will likely recur because Gertrude lives with a chronic mental illness.

¶ 27 Gertrude again raises an issue of statutory compliance as it applies specifically to her case. Section 2-107.1(a-5)(1) of the Mental Health Code provides, in relevant portion, that "the petitioner shall deliver a copy of the petition, and notice of the time and place of the hearing, to the respondent *** and the guardian, if any, not later than 3 days prior to the date of the hearing." 405 ILCS 5/2-107.1(a-5)(4) (West 2020). The section further details the methods of service that can be employed and the proper procedure to follow if acknowledgment of service is not received. *Id*. Gertrude argues the State did not comply with the above notice requirements where there is nothing in the record to establish that both of Gertrude's co-guardians were provided notice of the hearing. Here, as above, Gertrude does not contend that the circuit court routinely misapprehends or neglects the notice requirements of the Mental Health Code. Rather, she argues the circuit court erred when it found the State properly notified her guardians of the petition and hearing, despite the State's alleged failure to affirmatively demonstrate its compliance. This claim raises a case-specific inquiry that does not generally warrant application of the public-interest exception. See *Rita P.*, 2014 IL 115798, ¶ 36; *Alfred H.H.*, 233 Ill. 2d at 356-57.

¶ 28      Where Gertrude has failed to establish the first criterion of the public interest exception, and all criteria must be shown to address a moot issue, we need not address the second and third criteria.

¶ 29                    B. Capable of Repetition Yet Avoiding Review Exception

¶ 30      Alternatively, Gertrude argues the capable of repetition yet avoiding review exception to the mootness doctrine applies to her claims on appeal. The capable of repetition yet avoiding review exception has two elements: (1) "the duration of the challenged action must be too short to be fully litigated prior to its cessation," and (2) "there must be a reasonable expectation that 'the same complaining party would be subjected to the same action again.' " *Alfred H.H.*, 233 Ill. 2d at 358 (quoting *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998)).

¶ 31      In the instant case, it is indisputable that the first element of the capable of repetition yet avoiding review exception has been met. As previously noted, the trial court's order of involuntary treatment expired after 90 days. Consequently, the order could not have been fully litigated within that time. Accordingly, we must turn to the second element, that is, whether there is a reasonable expectation that Gertrude would be subjected to the same action again.

¶ 32      We find the capable of repetition yet avoiding review exception does not apply where Gertrude cannot satisfy the second requirement for application with respect to either of her claims. Whether or not the State sufficiently complied with section 405 ILCS 5/2-107.1(a-5)(1)'s explicit notice requirements in this case is a decidedly fact-intensive inquiry that would have no effect upon the State's compliance in future proceedings. We will not presume, as Gertrude essentially asks us to do, that because notice errors allegedly occurred in the current proceeding, they are likely to recur in the future. Similarly, we find that sections 2-107.1(a-5)(4) and 2-107.1(c) of the Mental Health Code clearly provide instruction for the circuit court regarding (1) the factors that

must be present to order the involuntary administration of medication and (2) the ability of a guardian to consent to administration of medication to a non-objecting recipient. Where Gertrude requests that we assess whether the court's compliance with the above-referenced sections of the Mental Health Code was sufficient in this particular case, we find that this inquiry is also an extremely fact-intensive inquiry that would have no effect upon a court's compliance in future proceedings. Gertrude does not challenge the interpretation of the Mental Health Code, nor does she raise a constitutional argument. Accordingly, there is no clear indication that resolving this question would affect respondents in future Mental Health Code proceedings. See *Alfred H.H.*, 233 Ill. 2d at 360. We therefore hold that Gertrude has not met the capable of repetition yet evading review exception.

¶ 33                                    IV. CONCLUSION

¶ 34        Based on the foregoing reasons, Gertrude's appeal is moot and is not excused by any applicable exception to the mootness doctrine; thus, it is not subject to review and is therefore dismissed as moot.

¶ 35    Appeal dismissed.